# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

TIMOTHY ABEITA ROMERO,

    Plaintiff,

vs.                                          No. CIV 17-0130 JB\KBM

UNITED STATES OF AMERICA,

    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction, filed May 3, 2017 (Doc. 8)("MTD"). The primary issue is whether the Federal Tort Claims Act, 28 U.S.C. §§ 2671-2680 ("FTCA"), which waives Plaintiff United States' sovereign immunity in circumstances where a private person would be liable, means that New Mexico Medical Malpractice Act's statute of repose, N.M. Stat. Ann. § 41-5-13, applies to FTCA claims. The Court concludes that New Mexico's statute of repose does not apply to FTCA claims, because the FTCA's sovereign immunity waiver looks to state law to determine whether an event renders the United States liable and not to determine whether a particular claim is timely filed. Accordingly, the Court concludes that the FTCA waives the United States' sovereign immunity in this case and denies the MTD.

## FACTUAL BACKGROUND[1]

On June 28, 2010, Romero, a member of the Laguna Tribe, see Complaint Under the Federal Tort Claims Act for Damages Caused by Negligence ¶ 16, at 3, filed January 27, 2017 (Doc. 1)("Complaint"), checked into Acoma Canoncito Laguna Hospital ("Laguna Hospital")

---

[1]The Court draws its facts from the Complaint and other pleadings, not because the Court accepts them as true, but to provide a coherent timeline of events.

complaining of abdominal pain, nausea, and vomiting, see Complaint ¶ 18, at 3. Laguna Hospital gave Romero pain medication and released him. See Complaint ¶ 18, at 3. Romero returned to Laguna Hospital two days later reporting identical symptoms. See Complaint ¶ 19, at 3. This time, Laguna Hospital diagnosed Romero with possible sepsis, and Romero was airlifted to a "tertiary facility" in Albuquerque, New Mexico. Complaint ¶ 19, at 3. The tertiary facility diagnosed Romero with septic shock "from an intra-abdominal catastrophe, ultimately due to a perforated appendix with feculent peritonitis." Complaint ¶ 20, at 3. Over the next several weeks, Romero was kept on full ventilator support, underwent multiple surgeries, and "was left with an ileostomy drainage bag." Complaint ¶ 20, at 3-4.

Romero was incarcerated "in late 2010, until 2012, and then he was incarcerated again within a matter of about 4-5 months." Response at 2. Romero filed a claim with the Department of Health and Human Services ("HHS") on March 21, 2012. See Complaint ¶ 10, at 2. HHS denied Romero's claim in writing on or about April 27, 2016. See Complaint ¶ 11, at 2. Romero filed a request with HHS for reconsideration on June 29, 2016, see Complaint ¶ 13, at 3, while he was incarcerated in Towaoc, Colorado, see Response at 2. HHS denied the request in writing on July 27, 2016. See Complaint ¶ 13, at 3. Romero was released from jail on September 16, 2016. See Response at 2.

## PROCEDURAL BACKGROUND

Romero filed his Complaint pursuant to the FTCA on January 27, 2017, alleging that Laguna Hospital staff members negligently misdiagnosed his condition. See Complaint ¶ 27, at 4-5. Romero seeks compensatory damages for Laguna Hospital's employee's negligence. See Complaint ¶¶ 1, 32, at 1, 6. Romero asserts that the Court has federal-question jurisdiction, because he brings claims under the FTCA. See Complaint ¶ 2, at 1.

1.    **The Motion to Dismiss.**

In its MTD, the United States asserts that Romero must file a notice of claim within both the FTCA's statute of limitations and within the New Mexico Medical Malpractice Act's ("NMMMA"), N.M. Stat. Ann. §§ 41-5-1 to -29 statute of repose.  See MTD at 4.  The United States argues that the Court should dismiss the Complaint for lack of subject-matter jurisdiction, because Romero did not file his Complaint within the New Mexico statute of repose's time limit. See MTD at 4-10.  The United States contends that the FTCA waives sovereign immunity only under circumstances where state laws would hold a private individual liable for comparable acts. See MTD at 6-7.  According to the United States, a statute of repose "creates a substantive right in those protected to be free from liability after a legislatively-determined period of time.  It follows that a statute of repose, as substantive state law that defines when a cause of action no longer exists, is applicable in FTCA actions."  MTD at 6 (citing Alexander v. Beech Aircraft Corp., 952 F.3d 1215, 1223 (10th Cir. 1991)).  Consequently, the United States asserts, the Court lacks subject-matter jurisdiction on this case unless Romero's claims satisfy the statute of limitations and the statute of repose.  See MTD at 7.  The United States then argues that Romero's claims do not satisfy New Mexico's statute of repose.  See MTD at 8-10

2.    **The Response.**

Romero filed a response on May 30, 2017.  See Response to Defendant's Motion to Dismiss (Doc. 8), filed May 30, 2017 (Doc. 12)("Response").  First, Romero argues that the statute of repose does not bar his FTCA claims, because New Mexico's statute of repose applies only to claims brought under the NMMMA, against "healthcare providers who actively opt to buy into the act's funding and other provisions."  Response at 1-2.

Second, Romero argues that the FTCA implicitly preempts New Mexico's statute of repose, because the statute of repose "stands as a significant impediment to the federal scheme."

Response at 6.  For instance, Romero notes that the FTCA provides that, if more than six months have passed without an agency resolution, a claimant may take his or her claim to federal court "at any time thereafter," Response at 6 (quoting 28 U.S.C. § 2675); he adds that New Mexico's three-year statute of repose "significantly limit[s] this option," Response at 6.  Romero outlines some scenarios that underscore the problems with applying New Mexico's statute of repose to FTCA claims:

> [U]nder the facts of this case, plaintiff could have filed his Form 95 at any time up to the second anniversary of the claimed harm. If he took the full amount of available time, he could have presented his tort notice until June 28, 2012, at which time the federal statute of limitations would bar his claim. He could not have filed his lawsuit at any time prior to six months after he submitted his Form 95, so if the state statue is applied, he would have had only six months within which to file a federal court lawsuit.  The FTCA gives him the option of continuing the administrative process and not having to be rushed into litigation. In another example, let's say plaintiff did not discover his injury and what might have caused it for a few years, and thus filed his lawsuit shortly after the third anniversary of the negligence,  even though he filed his administrative claim before the repose period ended. His claim would be wiped out, he would never have an opportunity to pursue his claim,  and  the purpose of the FTCA defeated. He would have complied with the FTCA, but due to no fault on his part his legal right would be wiped out.

Response at 6-7.  Romero states that the Tenth Circuit has not considered whether the FTCA preempts state statutes of repose, <u>see</u> Response at 5, but one United States Circuit Courts of Appeal and federal district courts have concluded that it does, <u>see</u> Response at 7-10 (citing <u>Kennedy v. United States</u>, 526 F. App'x 450, 458 (6th Cir. 2013)(White, J., concurring); <u>McKinley v. United States</u>, 2015 WL 5842626, at *13 (M.D. Ga. Oct. 5, 2015)(Lawson, J.); <u>Cooper v. United States</u>, 2013 WL 6845988 at *5 (E.D. Penn. Dec. 30, 2013)(Goldberg, J.); <u>Blau v. United States</u>, 2013 WL 704762, at *1 (M.D. Fla. Feb. 26, 2013)(Lazzara, J.); <u>Abila v. United States</u>, 2012 WL 4711952 at *4 (D. Nev. Oct. 3, 2012)(Dawson, J.); <u>Mamea v. United States</u>, 2011 WL 4371712 at *10 (D. Haw. Sept. 16, 2011)(Kobayashi, J.); <u>Jones v. United</u>

States, 789 F. Supp. 2d 883, 892 (M.D. Tenn. 2011)(Haynes, Jr., J.); Zander v. United States, 786 F. Supp. 2d 880, 885-86 (D. Md. 2011)(Williams, Jr., J.)). Romero contends that most cases applying the statute of repose do not address FTCA preemption. See Response at 10 n.3 (citing Smith v. United States, 430 F. App'x. 246, 247 (5th Cir. 2011)(per curium); Stinnett v. United States, 891 F. Supp. 2d 858, 867-68 (M.D. Tenn. 2012)(Trauger, J.)); Simkins v. United States, 2011 WL 9368972, at **2-3 (C.D. Cal. Feb. 17, 2011)(Wright, II, J.).

Third, Romero contends that 28 U.S.C. § 2674 does not help the United States in this case. See Response at 10. Romero contends that although § 2674 limits liability against the United States "in the same manner and to the same extent as a private individual under like circumstances," the United States is not in a comparable position as an private individual defendant would be. Response at 10 (quoting 28 U.S.C. § 2674). Romero contends, for example, that a plaintiff proceeding under the FTCA has "distinct obligations that a plaintiff in state court does not have," like a requirement to exhaust administrative remedies. Response at 10-11. Romero also contends that applying a state's statute of repose to an FTCA lawsuit would mean that an FTCA plaintiff would have to file an administrative claim earlier than a plaintiff suing an individual would have to file a complaint, which means that "the circumstances are not alike." Response at 11.

Fourth, Romero contends that the United States would not be prejudiced if the Court does not apply the statute of repose, because the United States received notice of his lawsuit within two years of the alleged harm and possess relevant documentary records pertaining to Romero's claim. See Response at 11. Consequently, Romero concludes that applying New Mexico's statute of repose "serves no valid purpose." Response at 11-12.

### 3. **The Reply**.

The United States filed a reply on June 13, 2017.  See Reply to Plaintiff's Response to Motion to Dismiss, filed June 13, 2017 (Doc. 13)("Reply").  First, the United States argues that the Tenth Circuit has determined that NMMMA applies to the federal government.  See Reply at 2 (citing Haceesa v. United States, 309 F.3d 722, 728 (10th Cir. 2002)).  Second, the United States argues that the FTCA does not preempt New Mexico's statute of repose impliedly or expressly, because nothing in the FTCA overcomes the presumption that federal laws do not supplant state laws.  See Reply at 2-3.  Third, the United States contends there is no conflict between the FTCA's statute of limitations and New Mexico's statute of repose, because it is possible to satisfy both provisions.  See Reply at 3.  Fourth, the United States argues that the cases which Romero cites "appear to ignore the explicit incorporation of state substantive law into the FTCA and the fact that a plaintiff can, and must, comply with both the FTCA statute of limitations under 28 U.S.C. § 2401 and the New Mexico statute of repose."  Reply at 3-4.  Moreover, the United States asserts that the only United States Courts of Appeal to consider the question concluded that the FTCA's statute of limitations does not preempt state statutes of repose.  See Reply at 4 (citing Augutis v. United States, 732 F.3d 749, 753-54; Huddleston v. United States, 485 F. App'x 744, 745 (6th Cir. 2012)(unpublished); Anderson v. United States, 669 F.3d 161, 165 (4th Cir. 2011)).  Fifth, the United States contends that Romero's arguments are flawed, because he conflates statutes of limitations with statutes of repose, which are "plainly different legal principals."  Reply at 4-5.  Sixth, the United States argues that there is no sound basis upon which the Court may apply equitable tolling to Romero's claims, because statutes of repose cannot be tolled.  See Reply at 6-7.  The United States asserts that, even if the Court applies equitable tolling, Romero has not presented an adequate basis for such relief.  See Reply at 7.

# LAW REGARDING RULE 12(b)(1)

"Federal courts are courts of limited jurisdiction; they are empowered to hear only those cases authorized and defined in the Constitution which have been entrusted to them under a jurisdictional grant by Congress." Henry v. Office of Thrift Supervision, 43 F.3d 507, 511 (10th Cir. 1994)(citations omitted). A plaintiff generally bears the burden of demonstrating the court's jurisdiction to hear his or her claims. See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 104 (1998)("[T]he party invoking federal jurisdiction bears the burden of establishing its existence."). Rule 12(b)(1) allows a party to raise the defense of the court's "lack of jurisdiction over the subject matter" by motion. Fed. R. Civ. P. 12(b)(1). The Tenth Circuit has held that motions to dismiss for lack of subject-matter jurisdiction "generally take one of two forms: (1) a facial attack on the sufficiency of the complaint's allegations as to subject-matter jurisdiction; or (2) a challenge to the actual facts upon which subject matter jurisdiction is based." Ruiz v. McDonnell, 299 F .3d 1173, 1180 (10th Cir. 2002).

> On a facial attack, a plaintiff is afforded safeguards similar to those provided in opposing a rule 12(b)(6) motion: the court must consider the complaint's allegations to be true. See Ruiz v. McDonnell, 299 F.3d at 1180; Williamson v. Tucker, 645 F.2d 404, 412 (5th Cir. 1981). But when the attack is aimed at the jurisdictional facts themselves, a district court may not presume the truthfulness of those allegations. A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1). In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion.

Hill v. Vanderbilt Capital Advisors, LLC, No. CIV 10-0133, 2011 WL 6013025, at *8 (D.N.M. Sept. 30, 2011)(Browning, J.)(quoting Alto Eldorado Partners v. City of Santa Fe, 2009 WL 1312856, at *8-9). The United States Court of Appeals for the Fifth Circuit has stated:

> [T]he trial court may proceed as it never could under 12(b)(6) or Fed. R. Civ. P. 56. Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction -- its very power to hear the case -- there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear

> the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.

Williamson v. Tucker, 645 F.2d 404, 412-13 (5th Cir. 1981)(quoting Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977)).

When making a rule 12(b)(1) motion, a party may go beyond the allegations in the complaint to challenge the facts upon which jurisdiction depends, and may do so by relying on affidavits or other evidence properly before the court. See New Mexicans for Bill Richardson v. Gonzales, 64 F.3d 1495, 1499 (10th Cir. 1995); Holt v. United States, 46 F.3d 1000, 1003 (10th Cir. 1995). In those instances, a court's reference to evidence outside the pleadings does not necessarily convert the motion to a rule 56 motion for summary judgment. See Holt v. United States, 46 F.3d at 1003 (citing Wheeler v. Hurdman, 825 F.2d 257, 259 n.5 (10th Cir. 1987)). Where, however, the court determines that jurisdictional issues raised in a rule 12(b)(1) motion are intertwined with the case's merits, the court should resolve the motion under either rule 12(b)(6) of the Federal Rules of Civil Procedure or rule 56 of the Federal Rules of Civil Procedure. See Franklin Sav. Corp. v. United States, 180 F.3d 1124, 1129 (10th Cir. 1999); Tippett v. United States, 108 F.3d 1194, 1196 (10th Cir. 1997). "When deciding whether jurisdiction is intertwined with the merits of a particular dispute, 'the underlying issue is whether resolution of the jurisdictional question requires resolution of an aspect of the substantive claim.'" Davis ex rel. Davis v. United States, 343 F.3d 1282, 1296 (10th Cir. 2003)(quoting Sizova v. Nat'l Inst. of Standards & Tech., 282 F.3d 1320, 1324 (10th Cir. 2002)).

## LAW REGARDING THE FTCA

It is "axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." United States v. Mitchell, 463 U.S. 206,

212 (1983)(citations omitted).  See Garcia v. United States, 709 F. Supp. 2d 1133, 1137 (D.N.M. 2010)(Browning, J.)("The United States cannot be sued without its consent."); id. at 1137-38 ("Congressional consent -- a waiver of the traditional principle of sovereign immunity -- is a prerequisite for federal-court jurisdiction.").  The law generally places the burden of proving federal jurisdiction on the proponent of jurisdiction, and the party bringing suit against the United States thus similarly bears the burden of proving that sovereign immunity has been waived.  See James v. United States, 970 F.2d 750, 753 (10th Cir. 1992).  See also Garcia v. United States, 709 F. Supp. 2d at 1138 ("The plaintiff bears the burden of proving that Congress has waived sovereign immunity for all of his claims.").  A waiver of sovereign immunity cannot be implied and must be unequivocally expressed.  See United States v. Nordic Vill., Inc., 503 U.S. 30, 33-34 (1992); United States v. Mitchell, 445 U.S. 535, 538 (1980); United States v. Murdock Mach. & Eng'g Co. of Utah, 81 F.3d 922, 930 (10th Cir. 1996).

The Tenth Circuit has emphasized that all dismissals for lack of jurisdiction, including those for a failure to establish a waiver of sovereign immunity under the FTCA, should be without prejudice.  See Mecca v. United States, 389 F. App'x 775, 780 (10th Cir. 2010)(unpublished).  It has explained: "A longstanding line of cases from this circuit holds that where the district court dismisses an action for lack of jurisdiction . . . the dismissal must be without prejudice." Mecca v. United States, 389 F. App'x at 780 (quoting Brereton v. Bountiful City Corp., 434 F.3d 1213, 1216 (10th Cir. 2006)).  The Tenth Circuit held in Mecca v. United States that the district court improperly dismissed with prejudice the plaintiff's FTCA claims after it concluded that it lacked jurisdiction over those claims.  See 389 F. App'x at 780-81 ("Here, because the district court found itself without jurisdiction over the FTCA claims, dismissal should have been entered without prejudice, even if the court deemed further

amendment futile. We therefore remand with instructions to enter dismissal of these claims without prejudice.").

The FTCA waives the United States' sovereign immunity for some tort actions against the United States seeking money damages. See Romanach v. United States, 579 F. Supp. 1017, 1019 (D.P.R. 1984)(Laffitte, J.). In enacting the FTCA, Congress waived the United States' sovereign immunity as to

> claims against the United States, for money damages accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be held liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b). "The FTCA's waiver of sovereign immunity is limited, however." Cortez v. EEOC, 585 F. Supp. 2d 1273, 1284 (D.N.M. 2007)(Browning, J.). "If the claim does not fall within the FTCA's express provisions, or if it falls within one of its exceptions, the claim is not cognizable under the FTCA, and the court must deny relief." Cortez v. EEOC, 585 F. Supp. 2d at 1284 (citing Williams v. United States, 50 F.3d 299, 304-05 (4th Cir. 1995)). Moreover, the only proper party in an action under the FTCA is the United States. See 28 U.S.C. § 2679(a); Romanach v. United States, 579 F. Supp. at 1018 n.1 (holding that no suit under the FTCA may lie against any agency of the United States eo nomine); Painter v. FBI, 537 F. Supp. 232, 236 (N.D. Ga. 1982)(Forrester, J.)(holding that "[t]he FBI may not be sued eo nomine").

Even when the FTCA waives the United States' sovereign immunity, the United States is liable for FTCA claims, if at all, only "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. "The law of the place where the alleged negligent conduct took place determines the scope of employment under the FTCA." Garcia v. United States, 2010 WL 2977611, at *18 (D.N.M. June 15, 2010)(Browning, J.)(citing

28 U.S.C. § 1346(b)).  See Richards v. United States, 369 U.S. 1, 9 (1962); Williams v. United States, 350 U.S. 857, 857 (1955); Henderson v. United States, 429 F.2d 588, 590 (10th Cir. 1970)).  Accordingly, "the United States is placed in the same position as a private individual by rendering the United States liable for the tortious conduct of its employees if such conduct is actionable in the state in which the United States' action or inaction occurred."  Cortez v. EEOC, 585 F. Supp. 2d at 1284.

The Supreme Court of the United States has rejected a reading of the FTCA that would impose liability on the United States only "to the same extent as would be imposed on a private individual 'under the same circumstances.'"  Indian Towing Co. v. United States, 350 U.S. 61, 65 (1955)(quoting 28 U.S.C. § 2674)("The Government reads that statute as if it imposed liability to the same extent as would be imposed on a private individual 'under the same circumstances.' But the statutory language is 'under like circumstances[]' . . . .").  The FTCA did not spur "the creation of new causes of action but acceptance of liability under circumstances that would bring private liability into existence."  Feres v. United States, 340 U.S. 135, 141 (1950).  It is important for a court to consider the United States' liability under all circumstances presented in the case as opposed to selectively considering only a few of the circumstances.  See Feres v. United States, 340 U.S. at 141-42.  The Supreme Court has illustrated:

> One obvious shortcoming in these claims is that plaintiffs can point to no liability of a "private individual" even remotely analogous to that which they are asserting against the United States.  We know of no American law which ever has permitted a soldier to recover for negligence, against either his superior officers or the Government he is serving.  Nor is there any liability "under like circumstances," for no private individual has power to conscript or mobilize a private army with such authorities over persons as the Government vests in echelons of command.  The nearest parallel, even if we were to treat "private individual" as including a state, would be the relationship between the states and their militia.  But if we indulge plaintiffs the benefit of this comparison, claimants cite us no state, and we know of none, which has permitted members of its militia to maintain tort actions for injuries suffered in the service, and in at least one state

the contrary has been held to be the case. It is true that if we consider relevant only a part of the circumstances and ignore the status of both the wronged and the wrongdoer in these cases we find analogous private liability. In the usual civilian doctor and patient relationship, there is of course a liability for malpractice. And a landlord would undoubtedly be held liable if an injury occurred to a tenant as the result of a negligently maintained heating plant. But the liability assumed by the Government here is that created by "all the circumstances," not that which a few of the circumstances might create. We find no parallel liability before, and we think no new one has been created by, this Act. Its effect is to waive immunity from recognized causes of action and was not to visit the Government with novel and unprecedented liabilities.

Feres v. United States, 340 U.S. at 141-42 (footnotes omitted).

The United States' liability is coextensive with that of private individuals under the respective states' law, even if comparable government actors would have additional defenses or additional obligations under that state's law. See Ewell v. United States, 776 F.2d 246, 248-49 (10th Cir. 1985); Proud v. United States, 723 F.2d 705 (9th Cir. 1984)("But appellants overlook the fact that in enacting the FTCA, Congress -- not the Hawaii Legislature -- determined the tort liability of the United States. And the FTCA specifically provides that the federal government's tort liability is co-extensive with that of a private individual under state law."); Cox v. United States, 881 F.2d 893, 895 (10th Cir. 1989)(citing Proud v. United States with approval and stating that "[t]his and other courts have applied the same rationale in holding that the United States may invoke the protection of a [private] recreational use statute"). The Tenth Circuit illustrated some of these same principles in Ewell v. United States:

The main goal of the FTCA was to waive sovereign immunity so that the federal government could be sued as if it were a private person for ordinary torts. Congress was primarily concerned with allowing a remedy where none had been allowed. There is no evidence that Congress was concerned with the prospect that immunities created solely for private persons would shield the United States from suit. The Supreme Court, in United States v. Muniz, 374 U.S. 150 . . . (1963), considered whether it is appropriate to apply immunities created by state law to the United States when it is sued under the FTCA. The Court was concerned with state laws that immunized prison officials from suits by prisoners and concluded that it is "improper to limit suits by federal prisoners because of restrictive state rules of immunity." 374 U.S. at 164 . . . . The immunity under consideration in

that case applied to state, county and municipal prison officials. Noting its decision in Indian Towing Co. v. United States, 350 U.S. at 65 . . . wherein the Court determined that federal liability had to be determined as if it were a private person and not as if it were a municipal corporation, it concluded that state law immunity applicable to state, county and municipal prison officials would not be applicable to a private person and, therefore, not applicable to the federal government in a suit under the FTCA.

Thus, while immunities afforded state, county and municipal employees are not applicable to the federal government when sued under the FTCA, immunities created by state law which are available to private persons will immunize the federal government because it is liable only as a private individual under like circumstances. It is evident, therefore, that the Utah district court was correct in granting the motion for summary judgment.

Ewell v. United States, 776 F.2d at 249.

In a unanimous decision, the Supreme Court recently reversed "a line of Ninth Circuit precedent permitting courts in certain circumstances to base a waiver" under the FTCA "simply upon a finding that local law would make a 'state or municipal entit[y]' liable." United States v. Olson, 546 U.S. 43, 44 (2005)(internal citation omitted). As the Supreme Court discussed in United States v. Olson, the United States Court of Appeals for the Ninth Circuit based its decision to find a waiver of liability under the FTCA on two principles:

In this case, two injured mine workers (and a spouse) have sued the United States claiming that the negligence of federal mine inspectors helped bring about a serious accident at an Arizona mine. The Federal District Court dismissed the lawsuit in part upon the ground that their allegations were insufficient to show that Arizona law would impose liability upon a private person in similar circumstances. The Ninth Circuit, in a brief per curiam opinion, reversed this determination. It reasoned from two premises. First, where "'unique governmental functions'" are at issue, the Act waives sovereign immunity if "'a state or municipal entity would be [subject to liability] under the law [. . .] where the activity occurred.'" Second, federal mine inspections being regulatory in nature are such "'unique governmental functions,'" since "there is no private-sector analogue for mine inspections." The Circuit then held that Arizona law would make "state and municipal entities" liable in the circumstances alleged; hence the FTCA waives the United States' sovereign immunity.

546 U.S. at 45 (alterations in original)(citations omitted). The Supreme Court "disagree[d] with both of the Ninth Circuit's legal premises." United States v. Olson, 546 U.S. at 45. Regarding

the first premise, the Supreme Court held:

> The first premise is too broad, for it reads into the Act something that is not there. The Act says that it waives sovereign immunity "under circumstances where the United States, if a private person," not "the United States, if a state or municipal entity," would be liable. Our cases have consistently adhered to this "private person" standard. In *Indian Towing Co. v. United States*, this Court rejected the Government's contention that there was "no liability for negligent performance of 'uniquely governmental functions.'" It held that the Act requires a court to look to the state-law liability of private entities, not to that of public entities, when assessing the Government's liability under the FTCA "in the performance of activities which private persons do not perform." In *Rayonier Inc. v. United States*, the Court rejected a claim that the scope of FTCA liability for "'uniquely governmental'" functions depends on whether state law "imposes liability on municipal or other local governments for the negligence of their agents acting in" similar circumstances. And even though both these cases involved Government efforts to escape liability by pointing to the absence of municipal entity liability, we are unaware of any reason for treating differently a plaintiff's effort to base liability solely upon the fact that a State would impose liability upon a municipal (or other state governmental) entity. Indeed, we have found nothing in the Act's context, history, or objectives or in the opinions of this Court suggesting a waiver of sovereign immunity solely upon that basis.

United States v. Olson, 546 U.S. at 45-46 (citations omitted).

The Supreme Court rejected the Ninth Circuit's second premise based on the following

rationale:

> The Ninth Circuit's second premise rests upon a reading of the Act that is too narrow. The Act makes the United States liable "in the same manner and to the same extent as a private individual under like circumstances." As this Court said in *Indian Towing*, the words "'like circumstances'" do not restrict a court's inquiry to the same circumstances, but require it to look further afield. The Court there considered a claim that the Coast Guard, responsible for operating a lighthouse, had failed "to check" the light's "battery and sun relay system," had failed "to make a proper examination" of outside "connections," had "fail[ed] to check the light" on a regular basis, and had failed to "repair the light or give warning that the light was not operating." These allegations, the Court held, were analogous to allegations of negligence by a private person "who undertakes to warn the public of danger and thereby induces reliance." It is "hornbook tort law," the Court added, that such a person "must perform his 'good Samaritan' task in a careful manner."

United States v. Olson, 546 U.S. at 46 (alterations in original).

The United States Court of Appeals for the Third Circuit has since held, relying on United States v. Olson: "Under the FTCA, the federal government can only be held liable for breaches of duties imposed on private, rather than state, parties." DeJesus v. U.S. Dep't of Veterans Affairs, 479 F.3d 271, 283 n.9 (3d Cir. 2007). The Fifth Circuit has held, also relying on United States v. Olson: "Because the federal government could never be exactly like a private actor, a court's job in applying the standard is to find the most reasonable analogy. Inherent differences between the government and a private person cannot be allowed to disrupt this analysis." In re FEMA Trailer Formaldehyde Prod. Liab. Litig., 668 F.3d 281, 288 (5th Cir. 2012)(citations omitted).

According to one commentator, courts have generally had little difficulty in finding a comparable factual analogy in the private sector for conduct in which the United States engages: "Although, as indicated above, courts have generally had little difficulty in finding sufficiently analogous private conduct, there have been exceptions, primarily in cases involving 'quasi-legislative' actions, such as administrative rulemaking, and in cases involving law enforcement officials, who, unlike private citizens, are required to make arrests in appropriate situations." 2 L. Jayson & R. Longstreth, Handling Federal Tort Claims § 9.08[1], at 9-219 (2011). The Tenth Circuit has stated: "It is virtually axiomatic that the FTCA does not apply where the claimed negligence arises out of the failure of the United States to carry out a [federal] statutory duty in the conduct of its own affairs." United States v. Agronics Inc., 164 F.3d 1343, 1345 (10th Cir. 1999). It recognized that "[o]ther courts invoke the same rule by the shorthand expressions of immune 'quasi-legislative' or 'quasi-judicial' action." United States v. Agronics Inc., 164 F.3d at 1345.

Thus, for example, courts have rejected FTCA claims premised upon such

administrative/regulatory acts or omissions as: (i) the Federal Aviation Administration's failure to take enforcement action against an entity not complying with federal laws and rules; (ii) the United States Department of Agriculture's failure to prohibit the exportation of disease-exposed cattle; and (iii) various agencies' noncompliance with proper rulemaking procedures.  See United States v. Agronics Inc., 164 F.3d at 1346 (citations omitted)(finding no FTCA waiver for "the unauthorized division of regulatory jurisdiction between two administrative agencies").

The Court examined FTCA's waiver of sovereign immunity exceptions in Coffey v. United States, 906 F. Supp. 2d 1114, 1157 (D.N.M. 2012)(Browning, J.).  In that case, a plaintiff brought a wrongful death and negligence action against the Bureau of Indian Affairs based on its decision to contract with a county detention center.  See 906 F. Supp. 2d at 1121. The United States argued against liability on the grounds that the detention center was an independent contractor and that the United States' decision to contract with it fell within the FTCA's discretionary function exemption.  See 906 F. Supp. 2d at 1121. The Court agreed on both points.  See 906 F. Supp. 2d at 1121.  It explained that the BIA's decision to contract with the detention center was "a matter of the BIA's judgment and choice, which is susceptible to policy analysis," and thus protected under the discretionary function exemption.  906 F. Supp. 2d at 1157.  It added that the United States "is liable under the FTCA for the actions of its employees only," thereby prohibiting liability for the detention center's actions.  906 F. Supp. 2d at 1164.

## LAW REGARDING PREEMPTION

Article VI, clause 2, of the Constitution provides that the laws of the United States "shall be the Supreme Law of the Land; . . . any Thing in the Constitution or Laws of any state to the Contrary notwithstanding."  U.S. Const. art. VI, cl. 2.  Consistent with the Supremacy Clause, the Supreme Court has "long recognized that state laws that conflict with federal law are

'without effect.'" Altria Grp., Inc. v. Good, 555 U.S. 70, 75 (2008)(quoting Maryland v. Louisiana., 451 U.S. 725, 746 (1981)). The Supreme Court has summarized the situations in which preemption is likely to be found:

> Pre-emption may be either expressed or implied, and is compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose. Absent explicit pre-emptive language, we have recognized at least two types of implied pre-emption: field pre-emption, where the scheme of federal regulation is so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it, and conflict pre-emption, where compliance with both federal and state regulations is a physical impossibility, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.

Gade v. Nat'l Solid Wastes Mgmt. Assoc., 505 U.S. 88, 98 (1992)(citations omitted).

Preemption may be express or implied. See Gade v. Nat'l Solid Wastes Mgmt. Assoc., 505 U.S. at 98. When faced with express preemption -- where a statute expressly states that it preempts certain areas of state law -- a court must determine the scope of the preemption that Congress intended. See Medtronic, Inc. v. Lohr, 518 U.S. 470, 485 (1996)(stating that "the purpose of Congress is the ultimate touch-stone in every pre-emption case"). "Congress may indicate pre-emptive intent through a statute's express language or through its structure and purpose." Altria Grp., Inc. v. Good, 555 U.S. at 77. When the preemption clause's text is susceptible to more than one plausible reading, courts ordinarily "accept the reading that disfavors pre-emption." Bates v. Dow Agrosciences, LLC, 544 U.S. 431, 449 (2005). Preemption arguments are analyzed under rule 12(b)(1). See Cedars-Sinai Med. Center v. Nat'l League of Postmasters of U.S., 497 F.3d 972, 975 (9th Cir. 2007)(applying rule 12(b)(1) when reviewing motion to dismiss asserting preemption defense).

Addressing express preemption requires a court to determine the preemption's scope. That task entails scrutinizing the preempting words in light of two presumptions, first,

> [i]n all pre-emption cases, and particularly in those in which Congress has legislated . . . in a field which the States have traditionally occupied, we start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.

Medtronic, Inc. v. Lohr, 518 U.S. at 485 (citations and internal quotation marks omitted).

Second, "[t]he purpose of Congress is the ultimate touchstone in every pre-emption case."

Medtronic, Inc. v. Lohr, 518 U.S. at 485 (citations and internal quotation marks omitted).

> Congress' intent, of course, primarily is discerned from the language of the pre-emption statute and the statutory framework surrounding it. Also relevant, however, is the structure and purpose of the statute as a whole, as revealed not only in the text, but through the reviewing court's reasoned understanding of the way in which Congress intended the statute and its surrounding regulatory scheme to affect business, consumers, and the law.

Medtronic, Inc. v. Lohr, 518 U.S. at 486 (citations and internal quotation marks omitted).

In a 2011 express-preemption decision, see Bruesewitz v. Wyeth, LLC, 562 U.S. 223 (2011), the Supreme Court concluded that the National Childhood Vaccine Injury Act, 42 U.S.C. §§ 300aa-11(c)(1), 300aa-13(a)(1)(A), preempted all design-defect claims that the plaintiffs seeking compensation brought against vaccine manufacturers for injury or death that certain vaccine side effects caused. See 562 U.S. at 230. The Supreme Court noted that Congress passed this act to "stabilize the vaccine market and facilitate compensation." 562 U.S. at 228. The Supreme Court noted that this federal statutory scheme provided for "[f]ast, informal adjudication," allowing "[c]laimants who show that a listed injury first manifested itself at the appropriate time are prima facie entitled to compensation." 562 U.S. at 228. Additionally,

> [a] claimant may also recover for unlisted side effects, and for listed side effects that occur at times other than those specified in the Table, but for those the claimant must prove causation. Unlike in tort suits, claimants under the Act are not required to show that the administered vaccine was defectively manufactured, labeled, or designed.

562 U.S. at 228-29 (footnote omitted). The Supreme Court also noted that the statutory scheme

has relatively favorable remedy provisions.  <u>See</u> 562 U.S. at 229.  "The <u>quid pro quo</u> for this, designed to stabilize the vaccine market, was the provision of significant tort-liability protections for vaccine manufacturers," such as limiting the availability of punitive damages and expressly eliminating liability for a vaccine's unavoidable, adverse side effects. 562 U.S. at 229.  The statutory text at issue in <u>Bruesewitz v. Wyeth, LLC</u> was as follows:

> No vaccine manufacturer shall be liable in a civil action for damages arising from a vaccine-related injury or death associated with the administration of a vaccine after October 1, 1988, if the injury or death resulted from side effects that were unavoidable even though the vaccine was properly prepared and was accompanied by proper directions and warnings.

562 U.S. at 230 (quoting 42 U.S.C. § 300aa-22(b)(1)).  The Supreme Court emphasized the use of the word "unavoidable" in reaching its conclusion that the statute preempts design defect claims resulting from unavoidable side effects.  562 U.S. at 231-32.  The Supreme Court also found it persuasive that the statutory text directly mentioned other aspects of product liability law.  <u>See</u> 562 U.S. at 232-33.

Implied conflict preemption exists when it is impossible for a private party to comply with both state and federal requirements, <u>see</u> <u>English v. General Elec. Co</u>., 496 U.S. 72, 78-79 (1990), or where state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," <u>Hines v. Davidowitz</u>, 312 U.S. 52, 67 (1941).  "Pre-emptive intent may also be inferred if the scope of the statute indicates that Congress intended federal law to occupy the legislative field, or if there is an actual conflict between state and federal law."  <u>Hines v. Davidowitz</u>, 312 U.S. at 67 (citing <u>Freightliner Corp. v. Myrick</u>, 514 U.S. 280, 287 (1995)).

The Supreme Court, in the past, concluded that implied preemption may take the form of "obstacle" preemption.  <u>Crosby v. Nat'l Foreign Trade Council</u>, 530 U.S. 363, 373 (2000)

(holding that preemption is appropriate where the challenged state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress"); Pharm. Research and Mfrs. of Am. v. Walsh, 538 U.S. 644, 679 (2003)(Thomas, J., concurring) ("Obstacle pre-emption turns on whether the goals of the federal statute are frustrated by the effect of the state law.").  The Supreme Court instructed that, in obstacle preemption cases, "there is no federal pre-emption in vacuo, without a constitutional text or a federal statute to assert it."  P.R. Dep't of Consumer Affairs v. Isla Petroleum Corp., 485 U.S. 495, 503 (1988). See Gade v. Nat'l Solid Wastes Mgmt. Assoc., 505 U.S. at 98. A reviewing court must still "examine the explicit statutory language and the structure and purpose of the statute."  Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 138 (1990).  In 2000, the Supreme Court decided Geier v. Am. Honda Motor Co., 529 U.S. 861 (2000), which held, by a five-to-four vote, that a federal regulation which permitted, but did not require, airbags to be installed in passenger vehicles preempted claims that a car was defective because it lacked an airbag.  See 529 U.S. at 874.  The majority found: "The rule of state tort law for which petitioners argue would stand as an 'obstacle' to the accomplishment of [the federal regulation's] objective.  And the statute foresees the application of ordinary principles of pre-emption in cases of actual conflict.  Hence, the tort action is pre-empted."  529 U.S. at 886.  Justice Stevens, in his dissenting opinion, expressed a desire to eliminate obstacle preemption.  He argued that the presumption against preemption

> serves as a limiting principle that prevents federal judges from running amok with our potentially boundless (and perhaps inadequately considered) doctrine of implied conflict pre-emption based on frustration of purposes -- i.e., that state law is pre-empted if it stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.

Geier v. Am. Honda Motor Co., 529 U.S. at 907-08 (Stevens, J., dissenting).

The Supreme Court has now begun to back away from finding implied preemption based

on an alleged conflict with the purposes underlying federal regulations.  In 2003, the Supreme

Court issued a unanimous decision in <u>Sprietsma v. Mercury Marine</u>, 537 U.S. 51 (2003),

rejecting implied conflict preemption of state law claims that a boat engine was defective

because it lacked a propeller guard.  <u>See</u> 537 U.S. 51 (2003).  In 2008, in <u>Altria Group. Inc. v.

Good</u>, the Supreme Court rejected the plaintiffs' obstacle-preemption claim that the Federal

Cigarette Labeling and Advertising Act, 15 U.S.C. §§ 1331-41, preempted a similar state act, <u>see</u>

Maine's Unfair Practices Act, Me. Rev. Stat. Ann., Tit. 5, § 207 (2008), because it presented an

obstacle to the Federal Trade Commission's longstanding policy of encouraging consumers to

rely on representations of tar and nicotine content based on an approved methodology.  <u>See</u>

<u>Altria Group. Inc. v. Good</u>, 555 U.S. at 90.  In 2009, in <u>Wyeth v. Levine</u>, 555 U.S. 555 (2009),

six Justices of the Supreme Court, including Justices Breyer and Kennedy, who joined in the

majority decision in <u>Geier v. Am. Honda Motor Co.</u>, rejected the plaintiff's two implied

preemption arguments -- impossibility preemption and obstacle preemption.  <u>See</u> <u>Wyeth v.</u>

<u>Levine</u>, 555 U.S. at 581.  The Supreme Court held that

> it is not impossible for Wyeth to comply with its state and federal law obligations
> and that Levine's common-law claims do not stand as an obstacle to the
> accomplishment of Congress' purposes in the [Federal Food, Drug, and Cosmetic
> Act, 21 U.S.C.A. §§ 301, 321, 331-337, 341-350, 361-364, and 381-399; 21
> C.F.R. § 201.80(e) ("FDCA")].

<u>Wyeth v. Levine</u>, 555 U.S. at 581.  In so ruling, Justice Stevens, writing for the majority,

narrowly limited <u>Geier v. Am. Honda Motor Co.</u> to its facts, stating that the Supreme Court

based its decision in that case on the "complex and extensive" history of the substantive

regulation at issue.  <u>Wyeth v. Levine</u>, 555 U.S. at 566.  The Supreme Court rejected obstacle

preemption, stating: "If Congress thought state-law suits posed an obstacle to its objectives, it

surely would have enacted an express pre-emption provision at some point during the FDCA's

70-year history." Wyeth v. Levine, 555 U.S. at 609. Justice Stevens quoted Justice O'Connor's explanation in Bonito Boats, Inc. v. Thunder Craft Boats, Inc., 489 U.S. 141 (1989): "The case for federal pre-emption is particularly weak where Congress has indicated its awareness of the operation of state law in a field of federal interest, and has nonetheless decided to stand by both concepts and to tolerate whatever tension there is between them." Wyeth v. Levine, 555 U.S. at 575 (quoting Bonito Boats, Inc. v. Thunder Craft Boats, Inc., 489 U.S. at 166-67).

Of particular import for the current status of implied obstacle preemption is Justice Thomas' concurring opinion in Wyeth v. Levine, in which he wrote:

> I write separately, however, because I cannot join the majority's implicit endorsement of far-reaching implied pre-emption doctrines. In particular, I have become increasingly skeptical of this Court's "purposes and objectives" pre-emption jurisprudence. Under this approach, the Court routinely invalidates state laws based on perceived conflicts with broad federal policy objectives, legislative history, or generalized notions of congressional purposes that are not embodied within the text of federal law. Because implied pre-emption doctrines that wander far from the statutory text are inconsistent with the Constitution, I concur only in the judgment.

555 U.S. at 583 (Thomas, J., concurring in the judgment). Justice Thomas stressed his concern:

> Under the vague and potentially boundless doctrine of purposes and objectives pre-emption . . . the Court has pre-empted state law based on its interpretation of broad federal policy objectives, legislative history, or generalized notions of congressional purposes that are not contained within the text of federal law . . . . Congressional and agency musings, however, do not satisfy the Art. I, § 7 requirements for enactment of federal law and, therefore, do not pre-empt state law under the Supremacy Clause.

Wyeth v. Levine, 555 U.S. at 587. Justice Thomas emphasized that, when analyzing federal statutes' or regulations' preemptive effect, "[e]vidence of pre-emptive purpose must be sought in the text and structure of the provision at issue" to comply with the Constitution. 555 U.S. at 588 (citing CSX Transp., Inc. v. Easterwood, 507 U.S. 658, 664 (1993)). Justice Thomas, writing for the five-to-four majority in PLIVA, Inc. v. Mensing, 564 U.S. 604 (2011), recently concluded,

however, that conflict preemption required the preemption of inconsistent state laws on generic drug labeling which conflicted with the respective federal law, because it was impossible to comply with both. See 564 U.S. at 617-618. The Supreme Court sought to reconcile Wyeth v. Levine, however, recognizing that the respective statutory schemes in each case were distinguishable. See PLIVA, Inc. v. Mensing, 564 U.S. at 626 ("It is beyond dispute that the federal statutes and regulations that apply to brand-name drug manufacturers are meaningfully different than those that apply to generic drug manufacturers.").

Moreover, the Supreme Court has put renewed emphasis on the presumption against preemption. See Wyeth v. Levine, 555 U.S. at 565 n.3. "In areas of traditional state regulation, [the Supreme Court] assume[s] that a federal statute has not supplanted state law unless Congress has made such an intention clear and manifest." Bates v. Dow Agrosciences, LLC, 544 U.S. at 449 (internal quotation marks omitted). If confronted with two plausible interpretations of a statute, the court has "a duty to accept the reading that disfavors pre-emption." Bates v. Dow Agrosciences, LLC, 544 U.S. at 449. See Wyeth v. Levine, 555 U.S. at 565; Cipollone v. Liggett Grp., Inc., 505 U.S. 504, 518 (1992)(plurality opinion).

In Arizona v. United States, 132 S. Ct. 2492 (2012), the Supreme Court once again emphasized the importance of clear Congressional intent when applying obstacle preemption. See 132 S. Ct. at 2505. The Supreme Court struck down an Arizona immigration law's provisions that would penalize aliens who sought, or engaged in, unauthorized employment, because it "would interfere with the careful balance struck by Congress with respect to unauthorized employment of aliens." 132 S. Ct. at 2505. With Justice Kagan taking no part in the consideration or decision, Justice Kennedy, writing for a five-to-three majority, which included Chief Justice Roberts and Justices Ginsburg, Breyer, and Sotomayor, wrote: "The

correct instruction to draw from the text, structure, and history of [the Immigration Reform and Control Act of 1986, 8 U.S.C. § 1101,] is that Congress decided it would be inappropriate to impose criminal penalties on aliens who seek or engage in unauthorized employment." Arizona v. United States, 132 S. Ct. at 2505. The Supreme Court ruled that Congressional intent is clear: Congress considered and rejected penalizing aliens who sought unauthorized employment. See 132 S. Ct. at 2504. Federal immigration law therefore preempted the Arizona law that penalized aliens seeking unauthorized employment, because it created a penalty that Congress had clearly and intentionally omitted. See 132 S. Ct. at 2505.

The Tenth Circuit has recognized federal preemption of state law in three categories: (i) when a federal statute expressly preempts state law ("express preemption"); (ii) where Congress intends to occupy a field ("field preemption"); and (iii) where a state law conflicts with a federal law ("conflict preemption"). Colo. Dep't of Pub. Health & Env't v. United States, 693 F.3d 1214, 1222 (10th Cir. 2012). As the defendant in Colo. Dep't of Pub. Health & Env't v. United States, the United States invoked only conflict preemption in moving to dismiss Colorado's claims against it; the Tenth Circuit therefore did not address field preemption. See 693 F.3d at 1222. "To avoid conflict preemption, 'it is not enough to say that the ultimate goal of both federal and state law is the same. A state law also is pre-empted if it interferes with the methods by which the federal statute was designed to reach this goal." Chamber of Commerce v. Edmondson, 594 F.3d 742, 769 (10th Cir. 2010)(quoting Int'l Paper Co. v. Ouellette, 479 U.S. 481, 494 (1987)(alterations and citation omitted)). In Colo. Dep't of Pub. Health & Env't v. United States, the state of Colorado created a schedule for the United States to follow in the destruction of hazardous waste stored in the state, in an attempt to prohibit the storage of hazardous waste within the state. See 693 F.3d at 1223. The Tenth Circuit held that the state

statute creating this schedule was in conflict with a statute which Congress passed, mandating a deadline for the destruction of the materials. See 693 F.3d at 1224. The Tenth Circuit reasoned that allowing Colorado to set a deadline for the destruction of the materials would impede the flexibility which Congress had intended in its deadline. See 693 F.3d at 1224. Because the Colorado deadline would interfere with the method that Congress had intended for the waste disposal, the Tenth Circuit concluded that the state law was in conflict with the federal law and, therefore, that the federal law preempted Colorado's schedule. See 693 F.3d at 1224. See also Pueblo of Pojoaque v. New Mexico, 2016 WL 6405927, at *50-55 (D.N.M. 2016)(Browning, J.) (concluding that the Indian Gaming Regulatory Act of 1988, 25 U.S.C. §§ 2701-2721, does not preempt off-reservation regulatory enforcement actions against non-Indian third-party entities), aff'd, 863 F.3d 1226, 1235-36 (10th Cir. 2017)(concluding that the Indian Gaming Regulatory Act of 1988 neither expressly nor impliedly preempts off-reservation state regulatory action).

## ANALYSIS

The Court concludes that New Mexico's statute of repose does not apply to FTCA claims. First, the FTCA does not preempt New Mexico's statute of repose, because federal law governs FTCA claims and the FTCA cannot preempt federal law. Second, the FTCA looks to state law to determine whether an event renders the United States liable and not to determine whether a particular claim is timely filed. Accordingly, the Court has subject-matter jurisdiction over this case and denies the MTD.

I.     **THE FTCA DOES NOT PREEMPT NEW MEXICO'S STATUTE OF REPOSE, BECAUSE THE FTCA LOOKS TO STATE LAW TO DEFINE FEDERAL LAW; THE FTCA REMAINS FEDERAL LAW AND ONE FEDERAL LAW CANNOT PREEMPT ANOTHER.**

The FTCA incorporates state law when defining its sovereign immunity waiver's scope. See 28 U.S.C. § 1346(b)(1) (stating that the United States is liable "under circumstances where

the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred"). The FTCA cannot preempt any state laws that it merely looks to, pursuant to § 1346(b)(1), for defining its sovereign immunity waiver's scope, because the waiver remains federal law. See Feres v. United States, 340 U.S. at 142 (noting that 28 U.S.C. § 1346(b) "recognizes and assimilates into federal law the rules of substantive law of the several states" (emphasis added)). Thus, there is no state law to preempt, because the state law merely informs the federal laws that govern the FTCA claim.[2]

---

[2] Neither party argued that the preemption analysis does not apply in this case. They are in good company, as several district courts have considered whether the FTCA preempts a state's statute of repose. See, e.g., Kennedy v. United States, 526 F. App'x at 458 (White, J., concurring); Doe v. United States, No. CIV 17-2326, 2017 WL 4516858, at *3 (D. Kan. 2017) (Murguia, J.); Cooper v. United States, 2013 WL 6845988 at *5; Blau v. United States, 2013 WL 704762, at *1; Jones v. United States, 789 F. Supp. 2d at 892; Mamea v. United States, 2011 WL 4371712 at *10; McKinley v. United States, 2015 WL 5842626, at *13; Abila v. United States, 2012 WL 4711952 at *4; Zander v. United States, 786 F. Supp. 2d at 885-86. The Court suspects that the confusion arises from courts' inconsistent language use when describing the Congressionally-required process of looking to state law and the infrequency that the distinction matters. Courts have, at various times, called this process "incorporating," "adopting," or "borrowing" state law into federal law, Boyle v. United Techs. Corp., 487 U.S. 500, 508 n.3 (1988), such that federal law acts as the "rule of the decision," S. Pac. Transp. Co. v. United States, 462 F. Supp. 1193, 1198 (E.D. Cal. 1978)(MacBride, C.J.), even though the federal law looks and acts exactly like a state law. See also Young v. United States, 149 F.R.D. 199, 202 (S.D. Cal. 1993)("Where state law operates of its own force, it is clear that state law supplies the rule of decision. However, where the state law becomes, in effect, the federal law by incorporation, then federal law supplies the rule of decision."); Quadrini v. Sikorsky Aircraft Div., United Aircraft Corp., 425 F. Supp. 81, 85 (D. Conn. 1977)(Newman, J.)(noting that a federal statute can "direct, as a matter of federal law, the application of state law"), on reconsideration sub nom. Quadrini v. Sikorsky Aircraft Div., 505 F. Supp. 1049 (D. Conn. 1981). An action brought under the FTCA is an example of this use of state law. See Richard H. Fallon, Jr., John F. Manning, Daniel J. Meltzer, & David L. Shapiro, Hart and Wechsler's The Federal Courts and The Federal System 665 (7th ed. 2015)("Hart & Wechsler")(noting that the FTCA is an example of "Federal legislation call[ing] for the application of state law as part of a federal scheme").

In any case, this use of state law as the federal rule of the decision is distinct from a federal court applying state law as a state court would, i.e., circumstances where the state law is "operative of its own force." S. Pac. Transp. Co. v. United States, 462 F. Supp. at 1209; Menses v. U.S. Postal Serv., 942 F. Supp. 1320, 1322 (D. Nev. 1996)(Johnston, J.). See also 28 U.S.C. § 1652 ("The laws of the several states, except where the Constitution . . . or Acts of Congress

## II. THE FTCA DOES NOT INCORPORATE NEW MEXICO'S STATUTE OF REPOSE, BECAUSE THE FTCA'S LIABILITY WAIVER REFERS TO THE CLAIM'S MERITS, NOT ITS TIMELINESS.

The FTCA states:

 [T]he district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C.A. § 1346(b)(1) (emphasis added). The United States reads this jurisdictional provision such that Romero's failure to comply with New Mexico's statute of repose -- which would prevent Romero from recovering damages from a private person -- deprives the Court of subject-matter jurisdiction. See Reply at 2. That reading is too expansive. The better reading of the statutory phrase "under circumstances where . . . a private person[] would be liable" refers to the act or omission allegedly giving rise to liability and not whether a claim seeking damages for that act or omission is timely. The FTCA has a lot to say about a claim's timeliness. See 28 U.S.C. §§ 2401(b) and (a); 28 U.S.C. § 2675(a). The Court cannot soundly conclude that § 1346(b)(1)'s general language incorporates a jurisdiction's timeliness rules when those rules

otherwise require or provide, shall be regarded as rules of decision in civil actions in the courts of the United States, in cases where they apply."). For example, in diversity actions, federal courts apply state law, because the federal court, in effect acts as a state court. See Cole v. Elliott Equip. Co., 653 F.2d 1031, 1034 (5th Cir. 1981)("[A] federal court exercising diversity jurisdiction is 'in effect, sitting as a state court.'" (quoting Commissioner v. Estate of Bosch, 387 U.S. 456, 465 (1967))); Menses v. U.S. Postal Serv., 942 F. Supp. at 1322 n.3 ("State law is generally operative of its own force in federal diversity cases wherein the source of a right sued upon is state substantive law such as tort or contract.").

The distinction "is largely academic in the usual case," S. Pac. Transp. Co. v. United States, 462 F. Supp. at 1209, worthy, perhaps, of an extra point or two on a Constitutional Law exam. It could matter, for instance, in determining whether the Supreme Court has jurisdiction over a state court ruling, because a state court ruling on a state law incorporated into federal law would pose a federal question. See Hart & Wechsler at 665 n.6. It matters here, because the Court cannot soundly analyze whether one federal law preempts another pursuant to the Supremacy Clause.

will be, at best, irrelevant to, and, at worst, incongruent with, the FTCA's established and

specific time-based rules.[3]  See United States v. Kubrick, 444 U.S. 111, 117-18 (1979)("[W]e

should not take it upon ourselves to extend the [FTCA's sovereign immunity] waiver beyond that

which Congress intended.  Neither, however, should we assume the authority to narrow the

waiver that Congress intended." (citations omitted)).  Rather, the Court concludes, as other

courts have concluded, see infra at 29-30, that Congress intended its procedural and temporal

framework for claims-filing to determine when and how a plaintiff may pursue litigation,[4] while

---

[3]A statute of limitations is "a statute establishing a time limit for suing in a civil case, based on the date when the claim accrued," to ensure the "diligent prosecution of known claims, thereby providing finality and predictability in legal affairs and ensuring that claims will be resolved while evidence is reasonably available and fresh."  Black's Law Dictionary, at 1636 (10th ed. 2014).  "Statutes of limitation . . . are designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared."  Order of R.R. Telegraphers v. Ry. Express Agency, Inc., 321 U.S. 342, 348-49 (1944).  Statutes of repose, on the other hand, "are intended to demarcate a period of time within which a plaintiff must bring claims or else the defendant's liability is extinguished."  Joseph v. Wiles, 223 F.3d 1155, 1167-68 (10th Cir. 2000). A statute of repose "runs from a fixed date readily determinable by the defendant," thus serving the need for finality.  Sterlin v. Biomune Sys., 154 F.3d 1191, 1196 n.9 (10th Cir. 1998)(quoting Caviness v. Derand Res. Corp., 983 F.2d 1295, 1300 n.7 (4th Cir.1993)).  "Unlike a statute of limitations, a statute of repose may bar a claim before the injury occurs."  Schneider v. Caterpillar, Inc., 301 F. App'x 755, 757 n.3 (10th Cir. 2008)(unpublished).

[4]If the Court applies New Mexico's statute of repose to this case, it would find no sound basis for equitable tolling.  In New Mexico, the only basis for equitable tolling is fraudulent concealment.  See Kern By & Through Kern v. St. Joseph Hosp., Inc., 1985-NMSC-031, ¶ 11, 697 P.2d 135, 139.  If a physician fraudulently conceals his or her malpractice, the statute of repose may be tolled so that the clock begins to run when the plaintiff discovers or should have discovered the harm.  See Kern By & Through Kern v. St. Joseph Hosp., Inc., 1985-NMSC-031, ¶ 11, 697 P.2d 135, 139 ("If tolled by fraudulent concealment, the [NMMMA'S] statute [of repose] commences to run again when the patient discovers, or through the exercise of reasonable diligence should have discovered, the malpractice.").  The doctrine "is based not upon a construction of the statute, but rather upon the principle of equitable estoppel," i.e., that the defendant should not benefit from his or her deceit.  Kern By & Through Kern v. St. Joseph Hosp., Inc., 1985-NMSC-031, ¶ 10, 697 P.2d at 138-39.  Fraudulent concealment does not automatically equitably toll New Mexico's statute of repose, however; if, despite a physician's fraudulent concealment, the plaintiff discovers, or reasonably should have discovered, the malpractice at a point when he or she has enough time to commence an action within three years

of the harmful act, the statute of repose will not be tolled. See Tomlinson v. George, 2003-NMCA-004, ¶ 17, 61 P.3d 195, 199 ("[W]here adequate time remains under Section 41-5-13, after discovery of fraudulent concealment of an act of malpractice, to file a claim by exercising ordinary diligence, a claim filed after the three-year Section 41-5-13 deadline will be barred."), aff'd, 2005-NMSC-020, ¶ 17, 116 P.3d 105.

To toll the NMMMA's statute of repose, a plaintiff must show (i) "that the physician knew of the alleged wrongful act and concealed it from the patient or had material information pertinent to its discovery which he failed to disclose"; and (ii) "that the patient did not know, or could not have known through the exercise of reasonable diligence, of his cause of action within the statutory period." Kern By & Through Kern v. St. Joseph Hosp., Inc., 1985-NMSC-031, ¶ 12, 697 P.2d at 139. See also Mata v. Anderson, 685 F. Supp. 2d 1223, 1282 (D.N.M. 2010) (Browning, J.)(not tolling a statute of limitations for a malicious-abuse of process claim, because the plaintiff did not show that defendant "made intentional false representations or concealed material facts of his role in [bringing] the criminal charges" (citing Kern By & Through Kern v. St. Joseph Hosp., Inc., 1985-NMSC-031, ¶ 12, 697 P.2d at 139)). In this case, Romero does not allege, and the record does not suggest, that his healthcare providers fraudulently concealed their malpractice. Nor is there a sound basis to equitably toll the statute of repose for the time Romero was incarcerated. See Response at 2 (stating that Romero was incarcerated "in late 2010, until 2012, and then he was incarcerated again within a matter of about 4-5 months," and released on September 16, 2016). New Mexico courts have not indicated that equitable tolling is appropriate for any situation other than fraudulent concealment, and, in any case, there is no indication that Romero's incarceration impeded his ability to pursue this action. See Response at 2 ("[Romero] filed his request for reconsideration of his tort claim while he was in jail in Towaoc, Colorado.").

The United States argues that equitable tolling would not apply to New Mexico's statute of repose in this case, because there was no fraudulent concealment. See MTD at 8-9; Reply at 6-7 (arguing generally that statutes of repose cannot be tolled). The United States overlooks, however, N.M. Stat. Ann. § 41-5-22, which tolls the statute of repose while a claim is under a medical commission's review, see N.M. Stat. Ann. § 41-5-14. Applying the statute of repose to an FTCA claim but tolling it during agency review would resolve concerns about undermining the FTCA's review process. The statute of repose would still relate, however, to how and when a plaintiff could pursue litigation, see infra at 29, and preclude claims that the FTCA considers timely by starting the clock at the malpractice occurrence instead of at the time of its discovery. The FTCA and the NMMMA also differ in their respective review process procedures, so the comparison is imperfect. For example, an FTCA claimant may file in court after six months of administrative review with no decision, see 28 U.S.C. § 2675; a NMMMA claimant must wait before filing until a state medical commission's decision is rendered, see N.M. Stat. Ann. § 41-5-15(A). In any case, it is worth noting that, in a world in which New Mexico's statute of repose applies in this case, but is tolled during the HHS review periods, Romero's claim would beat the three-year limit by several months: 632 days passed between his first Laguna Hospital visit, on January 28, 2010, see Complaint ¶ 18, at 3, and his first HHS claim, filed on March 21, 2012, see Complaint ¶ 10, at 2; 63 days passed between HHS' first denial, on April 27, 2016, see Complaint ¶ 12, at 2, and Romero's reconsideration claim, filed on June 29, 2016, see Complaint ¶ 13, at 3; 184 days passed between HHS' second denial, on July 27, 2016, see Complaint ¶ 13, at 3, and Romero's federal court claim, filed on January 27, 2017, see Complaint. Thus, the

letting the States decide what actions give rise to meritorious tort claims and the extent of a defendant's liability.[5]

Under the FTCA, a claimant may not sue the United States unless he or she has first gone through an administrative proceeding. See 28 U.S.C. § 2401(b). The claimant must file the claim with the relevant federal agency within two years from when the claim begins to accrue. See 28 U.S.C. § 2401(b). If the agency denies the claim, the plaintiff must begin a court action within six months of the agency's denial. See 28 U.S.C. § 2401(b). If the agency does not render a final determination within six months, the plaintiff may file the action "at any time thereafter." 28 U.S.C. § 2675(a). In any case, the plaintiff must file suit against the United States within six years after the right of action begins to accrue. See 28 U.S.C. § 2401(a). By requiring the parties to try to resolve the issue at the administrative stage, Congress hoped "to ease court congestion and avoid unnecessary litigation, while making it possible for the Government to expedite the fair settlement of tort claims asserted against the United States." 1966 U.S.C.C.A.N. 2515, 2516. See Daniel Shane Read, The Courts' Difficult Balancing Act to Be Fair to Both Plaintiff and Government Under the FTCA's Administrative Claims Process, 57 Baylor L. Rev. 785, 791 (2005); Jones v. United States, 789 F. Supp. 2d at 892 ("[T]he intent of

_____

number of days between the alleged malpractice and the date he filed his claim in federal court, less the time HHS reviewed his claim, comes to 879 days, or roughly 2.4 years.

[5]In Haceesa v. United States, 309 F.3d at 728, the Tenth Circuit determined that, in a FTCA action in New Mexico, the United States could invoke NMMMA's recovery cap, N.M. Stat. Ann. § 41-5-6(A) (capping non-punitive damages at $600,000.00). See Haceesa v. United States, 309 F.3d at 727. The Court's ruling in this case is consistent with the Tenth Circuit's decision in Haceesa v. United States, because the NMMMA's damages cap determines the extent of an individual defendant's liability, and the FTCA renders the United States liable "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). That damages cap does not relate to when and how a plaintiff may pursue an FTCA claim.

the FTCA [is] for claimants to first file their claims before the agency that would have the best information."); Cooper v. United States, 2013 WL 6845988, at *5 (stating that one of Congress' goals with the FTCA was to "avoiding unnecessary litigation by promoting settlement of meritorious claims at the agency level").

New Mexico's statute of repose clashes with the FTCA's structure and goals. First, barring malpractice claims brought after three years from the alleged harmful incident would preclude many claims that the FTCA considers timely. Under the FTCA, a plaintiff has two years from the moment a claim begins to accrue to file it with a federal agency and must wait at least six months after filing before taking the claim to court; by orienting the time limits by the moment a claim accrues -- which could be months or years after the alleged malpractice -- the FTCA permits claims that would not satisfy a three-year statute of repose. A plaintiff may have to rush the case to ensure that he or she is not stuck in the agency review phase when the statute of repose finishes running. Second, the statute of repose undermines the FTCA's goal to ease the judicial burden on claims by requiring the parties to try resolving the claims in an administrative review. See Kennedy v. U.S. Veterans Admin., 526 F. App'x at 458 ("[I]t is clear that Congress intended [for] . . . a plaintiff engaging in that [administrative] process have six months after the agency denial to evaluate his or her position."); Cooper v. United States, 2013 WL 6845988, at *6 ("When the manifest purpose of the FTCA's agency-review provisions is to resolve claims administratively, allowing a state law to effectively rush the claimant into federal court defeats that purpose."). If a statute of repose applies, a plaintiff may have to abandon an administrative review process to beat the statute of repose, even if the claimant believes that the administrative review is progressing towards an acceptable resolution. Additionally, applying the statute of repose could, in some circumstances, encourage agencies to purposefully delay resolving claims

if doing so would nudge the plaintiff's claim past the statute of repose.  See Kennedy v. U.S. Veterans Admin., 526 F. App'x at 458-59 (White, J., concurring)(warning that not preempting a state's statute of repose "would allow agencies to delay notices of denial in order to allow the statute of repose to extinguish a plaintiff's claim" which "is not what Congress intended . . . ."); Cooper v. United States, 2013 WL 6845988, at *6 (stating that applying a statute of repose "might encourage federal agencies" to delay its determinations).  Based on the FTCA's structure and Congress' stated goals, several courts have concluded that Congress intended for the FTCA's statute of limitations to provide the only time restrictions on claims against the United States.  See, e.g., Kennedy v. U.S. Veterans Admin., 526 F. App'x at 458-59 ("[The FTCA's] process is mandatory, and all its components and time limits are part of the whole of the FTCA scheme. Congress clearly intended that a claimant who files a timely claim with the agency will have properly invoked the administrative process."); McKinley v. United States, 2015 WL 5842626, at *13 ("The time limitations crafted by Congress in § 2401(b) persuade the Court that Congress intended to override state statutes of limitation and repose. Congress left no room for states to supplement the law with respect to the time constraints governing FTCA claims."); Blau v. United States, 2013 WL 704762, at *3 ("With respect to the FTCA's limitation period, it is couched in terms of accrual, indicating Congress 'intended to occupy the field of both statutes of limitations and statutes of repose.'" (quoting Mamea v. United States, 2011 WL 4371712, at *10)); Mamea v. United States, 2011 WL 4371712, at *10 ("By defining the statute of limitations as two years after accrual, Congress chose to allow suits against the United States that might be barred in states with shorter limitations periods, whether by statute of limitation or statute of repose."); Jones v. United States, 789 F. Supp. 2d at 892 ("[T]he FTCA establishes the existence of a federal claim until an agency renders a ruling on the claim. A claimant's claim is

extinguished only if the claimant fails to meet the deadlines in § 2401(b), and a state's statute of repose has no effect on the federal claim."). <u>See</u> <u>also</u> 10 C. Wright & A. Miller, <u>Federal Practice & Procedure</u>, § 3658, at 3658 (4th Ed. 2015)("[L]ower courts properly have recognized that Congress set no time limit on the agency's decision making, and importing a state statute of repose into the process would burden Congress's statutory design."). The Court disagrees with these courts insofar as they apply the preemption analysis to a state's statute of repose, <u>see</u> <u>infra</u> § I, but concurs with their conclusions that Congress did not intend for States' statutes of repose to interfere with the FTCA.

  **IT IS ORDERED** that the Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction, filed May 3, 2017 (Doc. 8), is denied.

               _____
               UNITED STATES DISTRICT JUDGE

*Counsel:*

Scott E. Borg
Barber & Borg, LLC
Albuquerque, NM

  *Attorneys for the Plaintiff*

James D. Tierney
 Acting United States Attorney
Roberto D. Ortega
 Assistant United States Attorney
United States Attorney's Office
Albuquerque, New Mexico

  *Attorneys for the Defendant*